UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| CARL YAGLOWSKI and PHYLLIS YAGLOWSKI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 3:14-cv-70-WGH-RLY |
| TRINITY COLLEGE OF THE BIBLE AND TRINITY THEOLOGICAL SEMINARY, INC., *et al.*, | ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter is before me, William G. Hussmann, Jr., United States Magistrate Judge, on the Plaintiffs' Motion for Summary Judgment ([Filing No. 32](#)), the parties' consent ([Filing No. 16](#)), and Judge Young's Order of Reference ([Filing No. 17](#)). The Plaintiffs have filed a brief and extensive evidence in support of their motion. (*See* [Filing No. 33](#).) The Defendants have not responded, and their time to do so has expired. Having considered the motion, the Plaintiffs' filings, and relevant law, and being duly advised, I hereby **GRANT** the motion.

I.  **Summary Judgment Standard**

A court must grant summary judgment on a claim or defense "where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "genuine"—precluding summary judgment—"only when the evidence could support a reasonable jury's verdict for the non-moving party." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 650 (7th Cir. 2011).

The movant "bears an initial burden of proving there is 'no material question of fact with respect to an essential element of the non-moving party's case.'" *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 657 (7th Cir. 2011) (quoting *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009)). That burden is formidable, and courts should exercise caution in granting summary judgment. *See Anderson*, 477 U.S. at 255. If the movant succeeds, the nonmovant then must present "evidence raising a genuine issue of material fact." *MMG Fin. Corp.*, 630 F.3d at 657. The nonmovant need not "clearly prove" his case to avoid summary judgment; he can survive by raising evidence of specific facts that would "permit" a jury to decide in his favor. *Williams v. City of Chicago*, 733 F.3d 749, 760 (7th Cir. 2013).

"At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th

Cir. 2005) (citing *Anderson*, 477 U.S. at 255). Effectively, the movant asks "the court to apply the law to only the [nonmovant]'s version" of the events. *See Norris v. Bain*, No. 1:04-cv-1545-DFH-TAB, 2006 WL 753131, at *1 (S.D. Ind. Mar. 21, 2006).

## II. Factual Background

In the autumn of 2009, Carl and Phyllis Yaglowski received solicitations from Trinity College of the Bible and Theological Seminary to participate in a high-interest loan program. (Filing No. 33-2; Filing No. 33-3.) In brief, the arrangement called for the Yaglowskis to invest money in Trinity and for Trinity to repay the principal plus 15% interest one year later.

Over the next three years, the Yaglowskis made ten separate loans to Trinity. In six cases, when the investment matured, the Yaglowskis opted to reinvest the payment they were owed in Trinity, creating another loan payable in another year. In one case, the Yaglowskis requested and received full payment from Trinity after maturity. In the remaining three cases, Trinity failed to issue—and still has failed to issue—payment after the loans matured. These three loans are the focus of the Yaglowskis' suit.

On July 11, 2012, the Yaglowskis transferred $50,000 to Trinity in exchange for a promissory note ("Note 1") calling for repayment in one year at 16% interest. (Filing No. 33-6.) On November 4, 2012, the Yaglowskis transferred $4592.02 to Trinity in exchange for a promissory note ("Note 2") calling for repayment in one year at 15% interest. (Filing No. 33-7.) And, on March 21, 2013, the Yaglowskis transferred $51,750 to Trinity in exchange for

3

a promissory note ("Note 3") calling for repayment in one year at 15% interest. ([Filing No. 33-8](#).)

Each Note includes identical language concerning default: "In the event that Trinity fails to make a payment of principal or interest when due, [the Yaglowskis] shall give Trinity written notice of such nonpayment and Trinity shall have fifteen (15) days from receipt of such notice to bring Trinity current in such payments." (*E.g.*, [Filing No. 33-8 at 1](#).) However, each Note goes on to state that the Yaglowskis may call for the entire debt—principle plus interest—to "become immediately due and payable five (5) days after written notice is given . . . ." (*[Id.](#)*) So the Yaglowskis must issue notice to trigger default, and—despite the 15-day provision—Trinity defaults by failing to issue payment within 5 days of that notice's issuance. Finally, once Trinity defaults, the Yaglowskis begin to accrue interest at the rate of 18% on the total predefault balance (principal plus predefault interest). (*[Id.](#)*)

In July of 2013, the Yaglowskis contacted Michelle Noble, Executive Assistant to Trinity's President, and indicated they wished to receive their interest payment on Note 1 and reinvest the principal in another loan. (*See* [Filing No. 33-20](#).) The Yaglowskis continued to correspond with Noble and Trinity President Harold Hunter throughout the autumn of 2013 but never received their interest payment or a new promissory note. (*See* [Filing No. 33-21](#); [Filing No. 33-22](#).) Instead, they were greeted each time with a series of excuses—including travel, health concerns, and the government shutdown—why Hunter had been unable to issue payment.

4

On January 21, 2014, attorney Deborah Edwards wrote Trinity on the Yaglowskis' behalf. (Filing No. 33-24.) By then, Notes 1 and 2 had matured, and Edwards stated that the Yaglowskis would consider Trinity in default unless it issued payment by January 21, 2014. (*Id.*) She also stated that the Yaglowskis would consider Trinity in default on Note 3—which was set to mature on March 21, 2014—unless Trinity issued payment by April 5, 2014. (*Id.*)

To date Trinity has not issued payment on any of the three outstanding notes. The Yaglowskis brought this lawsuit on May 15, 2014, seeking to recover from Trinity the principal and pre- and postdefault interest on each of the three notes. (Filing No. 1; Filing No. 26 at ECF p. 7.) The Yaglowskis also seek relief under the Indiana Uniform Securities Act against Trinity and six individual Defendants, including:

- Hunter;
- Noble;
- Chairman of the Board of Regents Thomas Rodgers;
- Treasurer Jim Reese;
- Vice President for Institutional Development Raymond Parker; and
- Vice President Chris Hunter.

(*Id.* at ECF pp. 1–2, 8–9.) The Yaglowskis have asked the Court for summary judgment in their favor, and the Defendants have not responded.

### III. Discussion

The Yaglowskis' First Amended Complaint presents two causes of action, but the same cannot be said of their Motion for Summary Judgment. Their brief contains minimal legal argument and, so far as I can discern, no reference to their Count II claim for relief under the Indiana Uniform Securities Act. Accordingly, I treat their motion as seeking judgment only as to their Count I claims for breach of contract—which they assert only against Trinity. (*See* [Filing No. 26 at ECF p. 7](.).)

Because the Court's jurisdiction over this action is based on diversity of citizenship (*see [id.](.) at ECF pp. 1–2*), Indiana law controls the outcome, *see [Maurer v. Speedway, LLC, 774 F.3d 1132, 1136 (7th Cir. 2014)](.)*. The Yaglowskis' motion implicates elementary principles of contract law. Interpretation of a contract's terms "is generally a question of law for which summary judgment is particularly appropriate." [*Breeding v. Kye's, Inc.*, 831 N.E.2d 188, 190 (Ind. Ct. App. 2005)](.). A party breaches a contract by failing to perform his obligations thereunder, [*id.* at 191](.), and the party injured by the breach "is entitled to recover the benefit of his bargain," [*Nat'l Advertising Co. v. Wilson Auto Parts, Inc.*, 569 N.E.2d 997, 1001 (Ind. Ct. App. 1991)](.).

Because the Defendants have not responded to the Yaglowskis' motion, they effectively have conceded that the Yaglowskis' factual assertions are true. *See [Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003)](.)* (noting that "failure to respond by the nonmovant . . . results in an admission."). The Yaglowskis' undisputed submissions indicate that Notes 1, 2, and 3 amount to valid

6

contracts and that the Defendants have failed to perform their duties to repay the Yaglowskis' investments. Summary judgment therefore is appropriate because no material fact is disputed and because Indiana contract law would entitle the Yaglowskis to what they seek—a judgment equaling the benefit of their bargain.

Accordingly, the Court need only determine the proper amount of that judgment. Although summary judgment is appropriate, I find that the correct measure differs slightly from the sums the Yaglowskis have proposed.

I accept the Yaglowski's contention that Notes 1 and 2 went into default by January 21, 2014. Both notes had matured by the time Edwards sent her letter of January 2, which served as Trinity's written notice of default, and January 21 is more than five days after January 2.

Note 1 was executed on July 11, 2012, with principal of $50,000 and interest at 16% per year. A period of 559 days elapsed between execution and default, and another 394 days have elapsed since default. Therefore, the Yaglowskis are entitled to judgment on Note 1 in the amount of $74,347.71, consisting of:

- $50,000 in prinicipal;
- $12,252.05 in predefault interest[1]; and
- $12,095.66 to date in postdefault interest[2].

---

[1] ($50,000) (0.16) (559/365) = $12,252.05

[2] ($50,000 + $12,252.05) (.18) (394/365) = 12,095.66

Note 2 was executed on November 4, 2012, with principal of $4,592.02 and interest at 15% per year. A period of 443 days elapsed between execution and default, and another 394 days have elapsed since default. Therefore, the Yaglowskis are entitled to judgment on Note 2 in the amount of $6,482.69, consisting of:

- $4,592.02 in prinicipal;
- $836.00 in predefault interest[3]; and
- $1,054.67 to date in postdefault interest[4].

I find that Note 3 went into default on May 20, 2014. The Yaglowskis argue that Note 3 fell into default on April 5, 2014—the date by which Edwards's letter stated they would consider the Note in default. But that letter was issued on January 2, 2014—more than three months before the Note matured. As a condition precedent to default, the Note called for the Yaglowskis to give notice of Trinity's failure "to make a payment of principal or interest when due . . . ." (*See* [Filing No. 33-8 at ECF p. 1](#).) Payment was not yet due when Edwards sent her letter, so it could not serve as that notice.

The first postmaturity communication between the Yaglowskis and Trinity presently before the Court is the Yaglowskis' Complaint, which undoubtedly constituted "written notice of such nonpayment . . . ." (*[See id.](#)*) The Yaglowskis filed their Complaint on May 15, 2014, so Trinity could not have defaulted until May 20.

---

[3] ($4,592.02) (0.15) (443/365) = $836

[4] ($4,592.02 + $836) (.18) (394/365) = $1,054.67

Note 3 was executed on March 21, 2013, with principal of $51,750.00 and interest at 15% per year. A period of 420 days elapsed between execution and default, and another 280 days have elapsed since default. Therefore, the Yaglowskis are entitled to judgment on Note 3 in the amount of $69,061.32, consisting of:

- $51,750 in principal;
- $8,932.19 in predefault interest[5]; and
- $8,379.13 to date in postdefault interest[6].

In sum, then, the Yaglowskis are entitled to judgment against Trinity in the amount of $149,891.72.[7]

The Yaglowskis appear to ask the Court to award postjudgment interest at the rate of 18% per year on each Note's predefault balance. (*See* Filing No. 32-1 at ECF pp. 2–3; Filing No. 33 at ECF p. 9.) By that theory, interest would continue to accrue on the Notes at a rate of $63.30 per day.[8] However, I question whether 18% would be the proper rate[9], so I decline at this stage to

---

[5] ($51,750) (0.15) (420/365) = $8,932.19

[6] ($51,750 + $8,932.19) (.18) (280/365) = $8,379.13

[7] $74,347.71 + $6,482.69 + $69,061.32 = $149,891.72

[8] ($50,000 + $12,252.05 + $4,592.02 + $836 + $51,750 + $8,932.19) (.18) (1/365) = $63.30

[9] *See* Ind. Code § 24-4.6-1-101(1) (stating that postjudgment interest "shall not exceed an annual rate of eight percent (8%) even though a higher rate of interest may properly have been charged according to the contract prior to judgment").

9

decide the proper rate of postjudgment interest. The parties may resolve this issue in the course of executing the judgment.

## IV. Conclusion

For the foregoing reasons, I **GRANT** the Yaglowskis' motion and direct that summary judgment be granted in their favor and against Trinity in the amount of $149,891.72, plus postjudgment interest as allowed by law. At this time, I direct that judgment be entered only against Trinity and only on Count I of the First Amended Complaint. Counsel for both parties should prepare to address Count II at the status conference scheduled to begin at 8:30 A.M. Central Time on March 9, 2015.

**SO ORDERED** this 19th day of February, 2015.

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge


**Served electronically on all ECF-registered counsel of record.**